ROESSLER & HASSLACHER CHEMICAL CO. v. STANDARD SILK DYEING CO.

(Circuit Court of Appeals, Second Circuit.  November 13, 1918.)

No. 4.

**1. Courts ⬦356—Federal Court—Finding of Fact—Waiver of Jury.**
Under Rev. St. § 649 (Comp. St. § 1587), where the parties waived a jury, the appellate court, on writ of error, is limited to the inquiry whether the findings of the referee, as altered and amended by the District Judge, justify his conclusions of law.

**2. Appeal and Error ⬦842(8)—Review—Questions Presented.**
In an action tried to the court without a jury, a question as to the construction of a provision in a written contract is one of law.

**3. Sales ⬦172—Performance by Sellers—Excuses.**
Where a contract for the sale of prussiate of soda, a German product, providing that the sellers should not be liable for causes beyond their control, including war, was made after declaration of war between Germany and Great Britain, performance was excused by the British order in council which in effect placed an embargo on shipments from Germany, for such provision cannot be deemed applicable only to embargoes or restraints in some future war to which the United States should be a party.

In Error to the District Court of the United States for the Southern District of New York.

Action by the Standard Silk Dyeing Company against the Roessler & Hasslacher Chemical Company.  There was a judgment for plaintiff (244 Fed. 250), and defendant brings error.  Reversed, and new trial ordered.

Creevey & Rogers, of New York City (George C. Holt, Garrard Glenn, William B. Walsh, and William S. Creevey, all of New York City, of counsel), for plaintiff in error.

Hugh Gordon Miller, of New York City, for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

WARD, Circuit Judge.  This is a writ of error to a judgment in favor of the plaintiff in an action at law for breach of a contract by the defendant to deliver 30,000–35,000 pounds of imported German prussiate of soda to the plaintiff in equal installments over the year 1915.  A jury was waived in writing and an order of reference agreed to directing the referee to make special findings of fact and conclusions of law and incorporate the same in his report.  The referee recommended a judgment in favor of the plaintiff for $175.60, but upon exceptions to his report the District Judge filed an opinion, stating his conclusions of law, and entered a judgment in favor of the plaintiff for $12,042.09, to which the defendant took this writ of error.

[1] We are limited to the inquiry whether the findings of the referee as altered or amended by the District Judge justify his conclusions of law.  Rev. Stat. U. S. § 649 (Comp. St. § 1587), provides:

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Issues of fact in civil cases in any Circuit Court may be tried and determined by the court, without the intervention of a jury, whenever the parties, or their attorneys of record, file with the clerk a stipulation in writing waiving a jury. The finding of the court upon the facts, which may be either general or special, shall have the same effect as the verdict of a jury."

See Milwaukee & St. Paul Ry. Co. v. Clark, 178 U. S. 353, 20 Sup. Ct. 924, 44 L. Ed. 1099.

January 13, 1915, the Rossler Company, defendant below, entered into contract with the Standard Silk Company, plaintiff below, the material provisions of which were as follows:

"Sold to: The Standard Silk Dyeing Co., Paterson, N. J.
"Through: Mr. E. Schwarzenbek,
"Article: Imported German prime yellow prussiate of soda (standard technical quality).
"Quantity: Thirty thousand (30,000) to thirty-five thousand (35,000) pounds.
"Price: Ten and one-quarter cents (10¼¢) per pound freight paid Paterson, N. J.
"The price is based on prevailing usual import charges (transportation and marine insurance, etc.). Any increase or decrease of such charges on all deliveries so affected for buyer's account. An additional charge for all rail shipments if water or rail and water transportation be closed from European works to seaport. War risks extra. All deliveries under this contract are subject to any alteration of U. S. tariff and revenue laws, as also any correction of value assessment by the U. S. appraisers.
"Terms: Net thirty (30) days or less one-half of one per cent. (½ of 1%) for cash in ten (10) days.
"Delivery: In equal installments over the year 1915.
"Payments in gold or its equivalent in current funds with exchange on New York. Deliveries, unless otherwise specified, in equal quantities at approximately uniform intervals during the contract period; each proportionate delivery as due, if not called for, sellers' option to postpone or cancel without tender on their part to buyers. Each delivery to stand as a separate sale; the irregularity of any delivery not to vitiate the contract as to the remaining installments. The usual leeway of fifteen (15) days for each delivery. Seller's liability ceases on making delivery to carrier at shipping point in good condition. Carrier acts as buyers' agent. Sellers not liable for nonarrival of any shipment lost in transit at sea or on land, or for losses or damage or delays due to causes beyond their control, including in such causes strikes, lockouts, floods, fires, accidents to work where the goods are manufactured, war, or insurrection. In addition to these causes, should sellers be delayed or cut off in whole or in part from their supply of raw materials by any other cause or reason, they shall not be liable to buyers for failure to deliver, or delay in delivery of the whole or any part of said merchandise. Suspended deliveries resumed after the cause of such suspension has been removed, at the same rate and at like intervals assigned under the contract, or canceled, at seller's option."

The District Judge found that the defendant was, among other things, an importer of chemical products from Germany, and was known to the trade as importing prussiate of soda from Germany for sale in this country; that it had March 30, 1915, outstanding contracts for importation of 815,702 pounds of prime yellow prussiate of soda (standard technical quality), and had made 12 contracts, including the plaintiff's, for delivery here during the year 1915 of 366,872 pounds of such prussiate of soda; this product the defendant continued to import from Germany in sufficient quantities to enable it to fulfill accruing installments under its outstanding contracts until on or about March 30th, when it had notice of an order in coun-

cil dated March 15th of the British government requiring its land and naval forces to prevent any goods whatever reaching Germany from other countries or reaching other countries from Germany; that this order was enforced against the protests of the government of the United States, with the result that there were no general importations of prussiate of soda after that date; that after March 30th the defendant had not enough prussiate of soda to fulfill its 12 outstanding contracts, each of which contained the same exception which the plaintiff's contained; that the subject-matter of the contract was prussiate of soda to be imported by the defendant from Germany; that it did not make any effort to obtain German prussiate of soda from any other place than Germany during the year 1915; that it appropriated all the prussiate of soda it then had ratably among the 12 outstanding contracts and performed its contract with the plaintiff down to the month of May; that from the month of May, and for each succeeding month covered by the contract, the defendant refused to honor the plaintiff's requisitions; that the only exception the defendant made in this appropriation of its stock on hand was the sale of 7,457 pounds to noncontract customers.

The referee found that the defendant's failure to deliver from May on was due to war conditions excepted in the contract except as to this 7,457 pounds, the plaintiff's ratable proportion of which was 9½ per cent. Accordingly he awarded damages in the sum of $175.60, being the difference between the contract price, 10¼ cents per pound, and 35 cents per pound, the price as of May 31, 1915.

Upon exceptions to the report of the referee, the District Judge declined to pass upon the questions whether war conditions were the proximate cause of the defendant's failure to deliver, or whether any apportionment of the defendant's stock on hand was made, and, if so, whether it was properly made, holding that the exception in question did not apply at all. Accordingly he directed judgment to be entered in favor of the plaintiff for $10,716.20, being the difference between the contract price, 10¼ cents per pound, and the market price, for each of the plaintiff's monthly requisitions thereafter, together with interest from January 1, 1916, and costs, aggregating $12,042.09.

[2, 3] The exceptions contained in the contract divide naturally into two categories, as follows:

"Sellers not liable for nonarrival of any shipment (1) lost in transit at sea or on land or (2) for losses or damage or delays due to causes beyond their control including in such causes strikes, lockouts, floods, fires, accidents to works where the goods are manufactured, war, or insurrection."

The first category does not apply at all, because no shipment was lost, nor do any of the exceptions in the second category relating to manufacture. This leaves for consideration only the exception of war.

The question involved is one of law, viz. whether the facts found by the District Judge sustain his conclusion of law, which was that the exception of losses due to war does not apply at all. His view was that, as the war between Germany and England existed when the contract was made, the parties must have intended relief in some

future war in which the United States should be involved. We cannot agree to this. The exception was not of war, but of losses or damage or delays due to war. Embargoes or restraints coming from the United States would be a defense, whether excepted or not. In our opinion the exception applied as much to the existing war between Germany and England as to any war which might subsequently arise and cause such damage, losses, or delays, whether the United States was a party to it or not. It was evidently more important and appropriate to the existing war than to wars that might subsequently arise. This particular war had continued for over five months when the contract was made, and for all that time and for three months later the defendant had been importing enough prussiate of soda from Germany to satisfy its outstanding contracts as they accrued. Both parties, of course, must be held to have had notice of the possibility of embargoes and restraints, and the exception was intended to cover just such possibilities. No one could have anticipated that this British order in council would be proclaimed, and it was this change of condition that caused the loss.

Many cases cited by the plaintiff do not contain an exception of war conditions and are therefore inapplicable. There is, of course, no doubt that a foreign war is no defense to a party who does not carry out his contract, unless there is an exception to that effect in his favor. The only federal case relied upon by the court below is Balfour Co. v. Steamship Co. (D. C.) 167 Fed. 1010, which is clearly distinguishable. In it the steamship company, during the Russo-Japanese war, had agreed in writing to reserve space in one of its steamers for a shipment of flour to Japan; all parties then knowing that flour had been declared contraband by Russia. The carrier's bill of lading, which would have been issued, had the flour been carried, contained the usual exception of restraints of princes, rulers, or peoples; but the court held that, the carrier having agreed to carry such contraband flour, which was a perfectly legal contract, this exception would be held to apply only to actual restraints or seizures, and would not excuse the carrier from refusing to carry because of possible seizures.

The judgment is reversed, and a new trial ordered.